**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAWN BALL,** | : | **CIVIL NO. 1:11-CV-2239** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| | : | |
| **SGT. CAMPBELL, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

I.      **Statement of Facts and of the Case**

      A.      **Introduction**

In many ways, Dawn Ball's current circumstances inspire both sorrow and concern.  The Plaintiff, Dawn Ball, is an inmate housed in the Restricted Housing Unit at the State Correctional Institution (SCI) Muncy, who by her own account suffers from a cascading array of severe mental illnesses, and candidly acknowledges that she is profoundly disturbed, informing the Court that:

> My mental health is declining. I suffer from OCD so bad I scrub my
> hands till they bleed, confusion, PTSD, disassociative disorder, I smell,
> see and hear things not there, severely stressed, phobias, agoraphobia,
> severe anxiety, lack of interest in things, lack of arousal in thing, racing
> thoughts, suicidal, cognitive problems and disorders, lack of interest in

1

life, disoriented, dizzyness, paranoid–schizophrenic, constant worry, frightened scared, can't properly care for myself, tics, bipolar, manic depressive, mood swings that are so severe, can't think clearly....

<u>Ball v. Beard</u>, No. 1:09-CV-845, (Doc. 42,  pp. 6-7).

Furthermore, Ball is also an inmate who has reported to the Ccourt that she engages in multiple episodes of destructive, self-defeating and senseless behavior. For example, recurring themes in Ball's lawsuits include Ball's penchant for smearing feces on herself and her cell, her destruction of her own clothing, and her use of her clothing to plug her toilet and flood her cell with water and human waste.  Ball is also, by her own admission, an inmate with a propensity for sudden, explosive  rages, as illustrated by the civil complaint which she has filed <u>Ball v. Barr</u>, No.1:11-CV-2240 (M.D.Pa.).  In this complaint, Ball describes an episode in which a discussion regarding the aesthetic qualities of a piece of cornbread escalated in a matter of moments into a profanity-laced wrestling match over a food tray.

While she suffers from paranoia, schizophrenia, and experiences these visual and auditory hallucinations, Ball is also a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take

place around her in prison.  Indeed, at present Ball has more than twenty-five

lawsuits lodged before this Court.[1]

Ball is also a prodigiously unsuccessful litigant, who has had at least three

prior lawsuits dismissed either for failure to exhaust her administrative remedies,

or as frivolous on the grounds that the lawsuit failed to state a claim upon which

relief could be granted.  The history of repeated, frivolous and meritless litigation

in federal court by this Plaintiff began in March of 2008, when Ball filed a

complaint in the case of Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.).  On

December 10, 2008, the District Court dismissed this civil action for failure to

exhaust her administrative remedies,   Ball v. SCI Muncy, No. 1:08-CV-391 (M.D.

_____

[1]See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.); Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden , No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther, No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.); Ball v. Eckroth, No. 1:11-CV-2238 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-10 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-11 (M.D.Pa.); Ball v Curham, No. 1:12-CV-12 (M.D.Pa.); Ball v. Giroux, No. 1:12-CV-812 (M.D.Pa.); Ball v. Giroux, No. 1:12-CV-813 (M.D.Pa.); Ball v. Hummel, No. 1:12-CV-814 (M.D.Pa.); Ball v. D'Addio, No. 1:12-CV-815 (M.D.Pa.) .

Pa.) (Doc. 36), and on July 22, 2010, the United States Court of Appeals for the Third Circuit affirmed the dismissal of this action. <u>Ball v. SCI Muncy</u>, No. 1:08-CV-391 (M.D. Pa.) (Doc. 44).

On May 5, 2009, Ball filed a second civil action in the case of <u>Ball v. Hartman</u>, No. 1:09-CV-844 (M.D. Pa.).  This action was dismissed by the District Court, which found Ball's complaint to be frivolous, <u>Ball v. Hartman</u>, No. 1:09-CV-844 (M.D. Pa.) (Docs 32, 33, and 36,) and Ball's appeal of this dismissal order was summarily denied by the court of appeals pursuant to 28 U.S.C. § 1915(e)(2)(B).[2]  <u>Ball v. Hartman</u>, No. 1:09-CV-844 (M.D. Pa.) (Doc. 48).

While this action was pending, Ball filed yet another lawsuit in the case of <u>Ball v. Butts</u>, No. 1:11-CV-1068 (M.D.Pa.) on June 3, 2011. <u>Ball v. Butts</u>, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 1).  On June 15, 2011, upon a screening review of this complaint, the District Court dismissed this action for failure to state a claim upon which relief could be granted <u>Ball v. Butts</u>, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 8).  Ball appealed this dismissal. <u>Ball v. Butts</u>, No. 1:11-CV-1068

---

[2]28 U.S.C. § 1915(e)(2)(B)(i) provides that; "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal, . . . is frivolous or malicious." Thus the appellate court's October 29, 2010, ruling was tantamount to a declaration that this action was also frivolous.

(M.D.Pa.)(Doc. 10). On September 21, 2011, the court of appeals entered an

opinion and order dismissing Ball's appeal as frivolous pursuant to 28 U.S.C. §

1915(e)(2)(B). That appellate court opinion and order spoke unambiguously

regarding the frivolous nature of this particular lawsuit filed by Ball, stating in

clear and precise terms that:

> Because we too have granted Ball leave to proceed IFP, we must
> screen this appeal to determine whether it is frivolous. See 28 U.S.C.
> § 1915(e)(2)(B)(I). An appeal is frivolous if it "lacks an arguable
> basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325
> (1989). This appeal lacks any such basis. As the District Court
> adequately explained, immunity extends even to judicial acts that are
> "done maliciously," and Ball has alleged nothing suggesting that
> Judge Butts acted in the "clear absence of all jurisdiction." Gallas v.
> Supreme Court of Pa., 211 F.3d 760, 769 (3d Cir.2000) (citation and
> internal quotation marks omitted). To the extent that Ball's request
> for injunctive relief might not have been subject to dismissal under §
> 1915(e)(2)(B)(iii), it was subject to dismissal under §
> 1915(e)(2)(B)(ii) because such relief is not available against "a
> judicial officer for an act ... taken in such officer's judicial capacity"
> under these circumstances. 42 U.S.C. § 1983. Finally, we are satisfied
> that any amendment of Ball's complaint would be futile. See Grayson
> v. Mayview State Hosp., 293 F.3d 103, 111 (3d Cir.2002). Thus, we
> will dismiss this appeal.

Ball v. Butts, No. 11-2862, 2011 WL 4375782, 1 (3d Cir. Sept 21, 2011).

## B.   Ball's Current Lawsuit

It is against this backdrop that Ball chose to pursue, and then abandon, the

instant case. The narrative thread in Ball's initial complaint, which was filed on

5

December 2, 2011, began with an extraordinary admission.  In this complaint Ball

confessed to attempting to cover-up institutional misconduct by another prisoner.

(Doc. 1)

In prison, inmates occasionally use fishing line to surreptitiously pass

contraband between cells.  Because of the security threats which this behavior

presents, this practice is forbidden, inmates are prohibited from possessing fishing

line, and fishing line is defined as illegal contraband in an institutional setting.

Rudacille v. Hoke, No. 08-1718, 2009 WL 464480 (M.D. Pa. Feb. 24, 2009).

On September 7, 2011, Ball attempted to cover-up and conceal the

possession and use of such contraband by a fellow inmate.  As Ball recited in her

complaint:  "On 9-7-11 I told inmate Crystal Chaplin to pull her fishing line in

because Sgt. Campbell walked on the pod."  (Doc. 1, ¶IV. 1)  Not surprisingly,

given the wholly illicit nature of this behavior, Ball reports in her complaint that

Sergeant Campbell "got very angry because I told her [follow inmate] to pull her

fishing line in." (Id.)

While Ball's complaint contained this clear admission to a significant

institutional infraction on her part, the balance of her pleading, which made claims

of wrongdoing against correctional staff, was somewhat more murky.  According

to Ball, at some later date, Sergeant Campbell reported to Lieutenant Hummel that

6

Ball was refusing to return her lunch tray to staff.  (Id., ¶IV. 2.)  Although Ball

denied that she resisted staff efforts to retrieve her lunch trays in the Fall of 2011,

Ball has filed a companion case with this court, Ball v. Barr, No. 11-CV-2240

(M.D.Pa.), in which she attached documents which actually confirmed this

assertion, acknowledging that when a correctional officer ordered Ball to return a

lunch tray after a dispute over a piece of cornbread, it was alleged that she refused

stating "Don't touch that tray you skinny limped dick  mother fucker." Ball v.

Barr, No. 11-CV-2240 (M.D.Pa.)(Doc. 1)

According to Ball's complaint, when Lieutenant Hummel learned of this

fracas regarding Ball's refusal to return meal trays, he directed that she receive

bagged meals instead of food trays.  Ball's complaint alleged that her receipt of

bagged meals in lieu of food trays led to yet another controversy.  Prison staff

reported that Ball, who had previously refused to return lunch trays, was now

refusing to return her meal bags to staff after consuming these bagged meals, a

charge that Ball denied.(Id.)

Presented with these allegations of renewed mealtime misconduct by Ball,

prison officials directed that Ball receive meals consisting of food loaf for three

days, for a total of nine food loaf meals.  (Id.)  "A Food Loaf is a 29-30 ounce loaf

(raw weight) made of various food ingredients as specified by the Department's

standardized recipe ..., that when blended together and baked, contains all the necessary caloric and nutritional requirements." Brown v. Sobina, No. 08-128, 2009 WL 5173717, *6 (W.D.Pa. Dec. 29, 2009).

Ball plainly does not like food loaf, complaining that "its so dry . . . it got stuck in my throat and I could not breath and I almost died. It is dangerous." (Id.) Ball alleged that on one of these nine occasions she received a "food loaf with fish in it," which she declined to eat because of a food allergy. While Ball leveled these dietary complaints regarding the packaging and content of her meals, notably lacking from her pleadings was any assertion that she was denied sustenance. Instead, her complaint was simply that she was given bagged meals, and then food loaf for three days. (Id.)

In addition to these dietary claims, Ball's complaint also alleged that Sergeant Campbell discarded some toothpaste, shampoo, deodorants, pens, toothbrushes, and other property which she possessed. However, Ball indicated that when she complained about this action she received a post-deprivation remedy in that Lieutenant Hummel ordered a number of these items replaced. While acknowledging that the discarded items were replaced by the prison, Ball's complaint seemed to persist in arguing that a dispute regarding discrepancies

between the number of deodorants and tubes of toothpaste discarded and returned presented issues of a constitutional dimension.

On the basis of these otherwise unadorned allegations, Ball sued four correctional officials–Lieutenants Beckley and Hummel, Sergeant Campbell, and C.O. Baldwin– and demanded both $20,000 in compensatory damages and punitive damages of $20,000 from each Defendant.

Along with this complaint, Ball filed a motion for leave to proceed *in forma pauperis*. (Doc. 2)  On December 9, 2011, we issued a report and recommendation which recommended that this motion for leave to proceed *in forma pauperis* be granted, but as part of the Court's legally-mandated screening process we recommended that the complaint  be dismissed for failure to state a claim upon which relief can be granted.  (Doc. 7)  Specifically, we recommended that the Plaintiff's complaint be dismissed without prejudice to the Plaintiff endeavoring to correct the defects cited in this report, provided that the Defendant acts within 20 days of any dismissal order.  (Id.)

On January 23, 2012, the District Court adopted this report and recommendation and entered the following order:

> [T]he Report and Recommendation (Doc. No. 7) is **ADOPTED** and
> Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE** to
> Plaintiff endeavoring to cure the defects outlined in the Report and

9

Recommendation within twenty days of the date of this order. *Failure to timely amend the complaint will result in the complaint being dismissed with prejudice.*

(Doc. 18)(emphasis added).

Despite this clear and precise warning from the District Court, Ball never filed an amended complaint in this action as directed by the Court.  Instead, Ball submitted a bewildering array of frivolous motions, objections, and requests for extension of time with the Court.  (Docs. 21, 22, 23, 24, 25, 27, 29, 31)  Even when we granted Ball's untimely request for additional time, (Doc. 26), Ball was unwilling or unable to timely file any amended complaint as ordered by this Court. Indeed, Ball has now expressly abandoned this litigation request.  (Doc. 33)

Accordingly, for the reasons set forth below, it is recommended that Ball's complaint now be dismissed with prejudice, for failure to state a claim upon which relief can be granted.

## II.   <u>Discussion</u>

### A.   <u>Ball's Failure to Comply With Court Orders Justifies Dismissal of This Action With Prejudice</u>

In this case we are confronted by a litigant who has failed to abide by court orders and file a timely amended complaint after her initial complaint was found to

be wholly deficient.  Ball has also repeatedly neglected to abide by orders and her

procedural defaults now compel the court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal
> Rules are meant to be applied in such a way as to promote justice. *See*
> Fed.R.Civ.P. 1.  Often that will mean that courts should strive to
> resolve cases on their merits whenever possible.  However, justice also
> requires that the merits of a particular dispute be placed before the
> court in a timely fashion ...." McCurdy v. American Bd. of Plastic
> Surgery, 157 F.3d 191, 197 (3d Cir.1998).

Lease v. Fishel, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet

of our legal system.  A failure on our part to enforce compliance with the rules, and

impose the sanctions mandated by those rules when the rules are repeatedly

breached, "would actually violate the dual mandate which guides this Court and

motivates our system of justice:  'that courts should strive to resolve cases on their

merits whenever possible [but that] justice also requires that the merits of a

particular dispute be placed before the court in a timely fashion'." Id.  Therefore,

we are obliged to ensure that one party's refusal to comply with the rules does not

lead to an unjustified prejudice to those parties who follow the rules.

One of these rules, which must be followed by all parties, is  Rule 41(b) of

the Federal Rules of Civil Procedure , which authorizes a court to dismiss a civil

action for failure to prosecute. Rule 41(b) states that: "If the plaintiff fails to

prosecute or to comply with these rules or a court order, [the court] may . . .

dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).  Decisions

regarding dismissal of actions for failure to prosecute rest in the sound discretion of

the court, and will not be disturbed absent an abuse of that discretion.  Emerson v.

Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted).  That

discretion, however, while broad is governed by certain factors, commonly referred

to as Poulis factors.  As the United States Court of Appeals for the Third Circuit

has noted:

> To determine whether the District Court abused its discretion [in
> dismissing a case for failure to prosecute], we evaluate its balancing of
> the following factors: (1) the extent of the party's personal
> responsibility; (2) the prejudice to the adversary caused by the failure
> to meet scheduling orders and respond to discovery; (3) a history of
> dilatoriness; (4) whether the conduct of the party or the attorney was
> willful or in bad faith; (5) the effectiveness of sanctions other than
> dismissal, which entails an analysis of alternative sanctions; and (6)
> the meritoriousness of the claim or defense. Poulis v. State Farm Fire
> and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to

determine whether a District Court has abused its discretion in dismissing for

failure to prosecute." Lopez v. Cousins, No. 10-1877,  2011 WL 2489897, *3 (3d

12

Cir. June 23, 2011)(quoting <u>Briscoe v. Klem</u>, 538 F.3d 252 (3d Cir. 2008))

Therefore, "[i]n balancing the <u>Poulis</u> factors, [courts] do not [employ] a . . .

'mechanical calculation' to determine whether a District Court abused its discretion

in dismissing a plaintiff's case. <u>Mindek v. Rigatti</u>, 964 F.2d 1369, 1373 (3d

Cir.1992)." <u>Briscoe v. Klaus</u>,  538 F.3d at 263.  Consistent with this view, it is

well-settled that " 'no single <u>Poulis</u> factor is dispositive,'  <u>Ware</u>, 322 F.3d at 222,

[and it is] clear that 'not all of the <u>Poulis</u> factors need be satisfied in order to

dismiss a complaint.' <u>Mindek</u>, 964 F.2d at 1373." <u>Briscoe v. Klaus</u>,  538 F.3d at

263.  However, recognizing the broad discretion conferred upon the district court in

making judgments weighing these six factors, the court of appeals has frequently

sustained such dismissal orders where there has been a pattern of dilatory conduct

by a *pro se* litigant who is not amenable to any lesser sanction.  <u>See, e.g.</u>, <u>Emerson</u>

<u>v. Thiel College, supra</u>; <u>Tillio v. Mendelsohn</u>, 256 F. App'x 509 (3d Cir. 2007);

<u>Reshard v. Lankenau Hospital</u>, 256 F. App'x 506  (3d Cir. 2007); <u>Azubuko v. Bell</u>

<u>National Organization</u>, 243 F. App'x 728 (3d Cir. 2007).

 In this case, a dispassionate assessment of the <u>Poulis </u>factors weighs heavily

in favor of dismissing this action with prejudice.  At the outset, a consideration of

the first <u>Poulis</u> factor, the extent of the party's personal responsibility, shows that

the delays in this case are entirely attributable to the Plaintiff, who has failed to abide by court orders, and has neglected to litigate this case.

Similarly, the second <u>Poulis</u> factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action. Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration.  As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." <u>Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund</u>, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." <u>Id</u>. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. <u>Id.</u>; see also <u>Ware v. Rodale Press, Inc.</u>, 322 F.3d 218, 222 (3d Cir.2003); <u>Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.</u>, 843 F.2d 683, 693-94 (3d Cir.1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." <u>Ware</u>, 322 F.3d at 222. Oftentimes, this type of prejudice involves disputes between the parties on discovery matters because the defendants were deprived of necessary information or had to expend costs to obtain court orders for compliance. <u>See, e.g.</u>, <u>Poulis</u>, 747 F.2d at 868 (finding that the defendants were prejudiced where the plaintiffs did not answer interrogatories, the defendants had to file a motion to compel the plaintiffs' answers, and the defendant had "to file its pre-trial statement without the opportunity to review plaintiffs' pretrial statement which was due to be filed first"); <u>Ware</u>, 322 F.3d at

220-23 (affirming the District Court's conclusion that a defendant had
been prejudiced where the plaintiff repeatedly ignored the defendant's
discovery request for the plaintiff's computation of damages and did
not provide it until one week prior to trial).

Briscoe  v. Klaus, 538 F.3d at 259-60.

In this case the Plaintiff's failure to litigate this claim, or comply with court orders,

now wholly frustrates and delays the resolution of this action.  In such instances,

the defendants are plainly prejudiced by the plaintiff's continuing inaction and

dismissal of the case clearly rests in the discretion of the trial judge. Tillio v.

Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings

compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir.

2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell

National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended

complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the

plaintiff's part–it becomes clear that dismissal of this action is now appropriate.  In

this regard, while it is evident that "'[e]xtensive or repeated delay or delinquency

constitutes a history of dilatoriness, such as consistent non-response to

interrogatories, or consistent tardiness in complying with court orders.' Adams, 29

F.3d at 874; [it is also clear that] conduct that occurs one or two times is

insufficient to demonstrate a 'history of dilatoriness.'" <u>Briscoe v. Klaus,</u> 538 F.3d at 260-61 (some citations omitted). Here, over the span of months, in this case and others, the Plaintiff has failed to timely file pleadings, and has not complied with orders of the Court, conduct which displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response to [discovery], or consistent tardiness in complying with court orders." <u>Adams,</u> 29 F.3d at 874.

The fourth <u>Poulis</u> factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the Plaintiff.  In this setting we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. <u>Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund</u>, 29 F.3d 863, 875 (3d Cir.1994). At this juncture, when the Plaintiff has failed to comply with instructions of the Court directing the Plaintiff to take specific actions in this case, and has violated the Court's orders, the Court is compelled to conclude that the Plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While <u>Poulis</u> also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing <u>Poulis</u> agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders,  lesser sanctions may not be an effective alternative.  <u>See, e.g., Briscoe v. Klaus</u>, 538 F.3d 252, 262-63 (3d Cir. 2008); <u>Emerson</u>, 296 F.3d at 191.  This case presents such a situation where the Plaintiff's status as a *pro se* litigant severely limits the ability of the Court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion.  In any event, by entering our prior orders, and repeatedly counseling the Plaintiff on her obligations in this and other cases, we have endeavored to use lesser sanctions, but to no avail. The Plaintiff still declines to obey court orders, and otherwise ignores her responsibilities as a litigant in this case.  Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under <u>Poulis</u> we are cautioned to consider one other factor, the meritoriousness of the Plaintiff's claims.  In our view, however, consideration of this factor cannot save this particular Plaintiff's claims, since Ball is now wholly non-compliant with her obligations as a litigant.  The Plaintiff cannot refuse to cooperate with this Court by filing an amended complaint, which  would address the merits of her claims, and then assert the untested merits of these unfiled claims

17

as grounds for denying a motion to sanction her for this refusal to file a proper amended complaint.  Indeed, it is well-settled that " 'no single <u>Poulis</u> factor is dispositive,' <u>Ware</u>, 322 F.3d at 222, [and it is] clear that 'not all of the <u>Poulis</u> factors need be satisfied in order to dismiss a complaint.' <u>Mindek</u>, 964 F.2d at 1373." <u>Briscoe v. Klaus</u>,  538 F.3d at 263. Therefore, the untested merits of the non-compliant Plaintiff's claims, standing alone, cannot defeat this sanctions motion.

In any event, as discussed below, we have already found that Ball's claims in this action plainly fail on their merits, yet another factor which favors dismissal of this action.  The legal flaws inherent in these claims are discussed separately below.

### B.    Ball's Claims Fail On Their Merits

Here, Ball's initial complaint failed on screening review conducted by the Court  pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a  prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> **(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

(1) is frivolous, malicious, or fails to state a claim upon which relief may be  granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the Court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted."  This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008) and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."  Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do."  Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id.  In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a

court should "begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth." <u>Id.</u> at 1950.  According to

the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." <u>Id.</u> at 1949.  Rather, in

conducting a review of the adequacy of complaint, the Supreme Court has advised

trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

<u>Id.</u> at 1950.

Thus, following <u>Twombly</u> and <u>Iqbal</u> a well-pleaded complaint must contain

more than mere legal labels and conclusions.  Rather, a complaint must recite

factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond

the level of mere speculation.  As the United States Court of Appeals for the Third

Circuit has stated:

> [A]fter <u>Iqbal,</u> when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First,
> the factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal  conclusions.  Second, a District
> Court must then determine whether the facts alleged in the complaint

are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

(a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Judged against these standards, Ball's initial *pro se* complaint in this case clearly failed to state a claim upon which relief can be granted.  At the outset, liberally construed, the gravamen of Ball's complaint was that prison officials violated Ball's rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to this inmate's needs when they fed her food in bags or food loaf.  Ball faced an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities. To sustain such a claim, Ball was required to plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim.  See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.)  In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' Id. at 837." Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to conditions of confinement claims like those apparently initially advanced by Ball.  In this setting, it is clear that:

> The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)). Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized
> measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)

Atkinson v. Taylor, 316 F.3d 257, 272 (3d Cir. 2003).

Judged against these standards, courts frequently rebuff inmate complaints like those made here relating to the packaging and presentation of meals.  Thus, "while prisoners are guaranteed a nutritionally adequate diet under the Eighth

Amendment, see Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir.1980), there is no

constitutional right to hot meals.  See Brown-El v. Delo, 969 F.2d 644, 648 (8th

Cir.1992) (finding frivolous prisoner's claim that his constitutional rights were

violated when he was served cold food)." Laufgas v. Speziale, 263 F.App'x. 192,

198 (3d Cir. 2008).  Similarly, the "purported deprivation of a single meal is not of

such magnitude as to rise to the level of a constitutional violation. See Robles v.

Coughlin, 725 F.2d 12, 15 (2d Cir.1983) (only a substantial deprivation of food to

a prisoner sets forth a viable Eighth Amendment claim)." Lindsey v. O'Connor, 327

F.App'x. 319, 321 (3d Cir. 2009).

 Nor does the receipt of food loaf as a meal, by itself, violate the Eighth

Amendment.  Quite the contrary, with respect to this prison dietary option it is

well-settled that:

> [U]nappetizing food served in prison is not constitutionally actionable.
> Maldonado v. McFaden, No. 94–1477, 1994 U.S. Dist. LEXIS 16837,
> at *11 (E.D.Pa. Nov. 23, 1994) ("[T]he Eighth Amendment requires
> only that inmates be provided food that is adequate to maintain health,
> and served in a sanitary manner."). Thus, "[a] temporary food loaf diet
> that fully comports with the nutritional and caloric requirements of [an
> inmate's] specific dietary needs does not constitute an extreme
> deprivation denying the minimal civilized measure of life's
> necessities." Id.; see also Gannaway, 2011 WL 1196905, at *5
> (holding that because the plaintiff never alleged the food loaf
> "presented an immediate danger to his health or well-being," the
> defendants did not feed food loaf to the plaintiff with the culpable
> state of mind necessary for an Eighth Amendment claim); Hinterlong

v. Hill, No. 05–5514, 2006 U.S. Dist. LEXIS 54952, at *16, 2006 WL
2303106 (E.D.Pa. Aug. 8, 2006).

Jones v. Beard, No. 10-5544, 2011 WL 3611470, *8 (E.D.Pa. August 16,2011).

Therefore, Ball's complaints regarding her bagged meals and three-day food loaf

diet simply did not rise to the level of a constitutional infraction and were properly

dismissed.

Furthermore, to the extent that Ball alleged that some of her deodorant,

toothpaste, shampoo and soap was confiscated by staff, her complaint affirmatively

revealed that when she spoke to prison supervisors these items were replaced.

(Doc. 1)  The replacement of these items by prison officials in response to Ball's

complaints was, and remains, fatal to any constitutional due process claims in this

setting since inmate due process claims arising out of the confiscation of property

are judged against settled legal standards, standards which recognize that:

> Like other constitutional rights, the Due Process rights of prisoners
> may be accommodated to a prison's legitimate security needs. See Bell
> v. Wolfish, 441 U.S. 520, 558-60, 99 S.Ct. 1861, 60 L.Ed.2d 447
> (1979). [Therefore] "[A]n unauthorized intentional deprivation of
> property" by prison officials does not violate the Due Process Clause
> "if a meaningful postdeprivation remedy for the loss is available."
> Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393
> (1984)(citing Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68
> L.Ed.2d 420 (1981)). Pre-deprivation notice is not constitutionally
> required. See id.

Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008).

Thus, there are two crucial components to any inmate due process claim in this setting: (1) the confiscation of property; and (2) an allegation that property was taken and the prisoner was afforded no post-deprivation administrative remedy.  In this case, liberally construed, Ball's complaint revealed that she was provided meaningful post-deprivation relief, and, in fact,  received replacement deodorant, toothpaste and soap from prison officials.  These facts, recited by Ball in her complaint, revealed that Ball had a meaningful postdeprivation remedy for this loss, and were fatal to any constitutional claim relating to the loss of this property.[3]

Finally, even if Ball had stated a colorable constitutional claim relating to her right to hot meals served on trays, or the return of multiple tubes of toothpaste, the Defendants were nevertheless entitled to qualified immunity from these claims for damages.   In order to establish a civil rights claim Ball must show the deprivation of a right secured by the United States Constitution or the laws of the

_____

[3]We continue to note that to the extent that Ball was calling upon the federal courts to mediate a dispute regarding the precise number of deodorants she was entitled to receive, she misconstrues both the reach of the constitution and the role of the courts.  As a constitutional due process claim relating to replacement of lost inmate property, we are only concerned with identifying whether Ball's complaints received a meaningful post-deprivation review in the prison, which plainly was the case here since property was returned to Ball. It is not the task of the federal courts to determine whether Ball was entitled to the return of 2 or 4 deodorants, as she alleged in her complaint.

United States. Satisfying these elements alone, however, does not guarantee that Ball is entitled to recover damages from these public officials.  Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, —U.S.—, 129 S. Ct. 808, 815 (2009). This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit." Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted).  Qualified immunity:

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 129 S. Ct. at 815

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries.  First, the court must evaluate whether the defendant violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson, 129 S. Ct. 808; Curley v.

Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d

Cir. 2006).  If the defendant did not actually commit a constitutional violation, then

the court must find in the defendant's favor.  Saucier, 533 U.S. at 201.  If the

defendant is found to have committed a constitutional violation, the court must

undertake a second, related inquiry to assess whether the constitutional right in

question was "clearly established" at the time the defendant acted.  Pearson, 129 S.

Ct. at 815-16; Saucier, 533 U.S. at 201-02.  The Supreme Court has instructed that

a right is clearly established for purposes of qualified immunity if a reasonable

state actor under the circumstances would understand that his conduct violates that

right.  Williams, 455 F.3d at 191 (citing Saucier, 533 U.S. at 202).

          In order to find that a right is clearly established, "the right allegedly

violated must be defined at the appropriate level of specificity."  Wilson, 526 U.S.

at 615.  The Supreme Court has explained that, at least in some cases, "a general

constitutional rule already identified in the decisional law may apply with obvious

clarity to the specific conduct in question, even though the very action in question

has [not] previously been held unlawful."  Hope v. Pelzer, 536 U.S. 730, 741

(2002) (quoting United States v. Lanier, 520 U.S. 259, 271 (1997) (internal

quotation marks and citation omitted)).  In some cases, "officials can still be on

notice that their conduct violates established law even in novel factual circumstances." Wilson, 455 F.3d at 191 (quoting Hope, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 129 S. Ct. at 820, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. Id. Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).")  Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment. See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

In this case, prison officials were confronted by a difficult, obstreperous inmate, who admitted to violating prison rules, and was alleged to have persisted in making meals a contentious test of wills.  On these facts, prison officials could not reasonably have anticipated that providing Ball with bagged meals and food loaf, and replacing property that she claimed was destroyed, would violate some clearly established constitutional right of the Plaintiff.  In short, given the state of the law in this field, in this setting the Defendants simply could not have recognized that their actions would violate "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999).  Therefore the Defendants were entitled to qualified immunity on these claims.[4]

In sum, in this case Ball's initial complaint–which has not been timely amended and now appears to have been abandoned– presented legally bankrupt claims, leveling a series of meritless allegations, and we found that the Defendants were entitled to qualified immunity on all of Ball's claims.  Therefore, all of the Poulis factors now call for dismissal of this case.

_____

[4]In appropriate cases this Court is entitled to address this qualified immunity defense *sua sponte*. See Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (affirming *sua sponte* recommendation of qualified immunity by U.S. magistrate judge).

Having concluded that this *pro se* complaint was flawed in multiple and profound ways, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay.  Alston v. Parker, 363 F.3d  229, 235 (3d Cir. 2004).  In this case, Ball was given this opportunity to amend her complaint, and has now forfeited this opportunity through her inaction.  Since we have found that her original complaint failed to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of this complaint make it clear that she has no right to relief, we conclude that granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

In this situation, where a wholly deficient complaint is dismissed without prejudice but the *pro se* Plaintiff refuses to timely amend the complaint, it is well within the Court's discretion to dismiss the complaint with prejudice given the Plaintiff's refusal to comply with court directives.  Indeed, the precise course was endorsed by the United States Court of Appeals for the Third Circuit in Pruden v. SCI Camp Hill, 252 F. App'x 436, 438 (3d Cir. 2007).  In Pruden, the appellate

32

court addressed how district judges should exercise discretion when a *pro se* plaintiff ignores instructions to amend a complaint.  In terms that are equally applicable here the court observed that:

> The District Court dismissed the complaint without prejudice and allowed [the *pro se* plaintiff] twenty days in which to file an amended complaint. [The *pro se* plaintiff] failed to do so. Because [the *pro se* plaintiff] decided not to amend his complaint in accordance with the Federal Rules of Civil Procedure, we conclude that the District Court did not abuse its discretion when it dismissed [the *pro se* plaintiff's] complaint with prejudice. See In re Westinghouse Securities Litigation, 90 F.3d 696, 704 (3d Cir.1996). The District Court expressly warned [the *pro se* plaintiff] that the failure to amend his complaint would result in dismissal of the action with prejudice. "[I]t is difficult to conceive of what other course the court could have followed." Id. (quoting Spain v. Gallegos, 26 F.3d 439, 455 (3d Cir.1994)).

Pruden v. SCI Camp Hill, 252 F. App'x 436, 438 (3d Cir. 2007).

Therefore, it is recommended that the complaint be dismissed as frivolous for failure to state a claim without further leave to amend.

## III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Plaintiff's complaint be dismissed as frivolous for failure to state a claim with prejudice and this case be closed.[5]

---

[5]We further recommend that Ball's cursory note that she has "dropped" this case not be treated as a voluntary dismissal.  (Doc. 33)  Such a treatment would be inappropriate for at least two reasons.  First, it is legally and factually inaccurate.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen  (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

---

Ball did not "drop" this case; it was dismissed as wholly lacking in merit, a decision that Ball initially contested in a halting and erratic fashion even as she refused to comply with court-ordered deadlines directing her to amend her complaint. To allow Ball to re-write history in this fashion and characterize her decision as some form of voluntary dismissal would be misleading, inaccurate and improper.  In addition, allowing Ball to file frivolous claims, ignore court orders, and then at her leisure declare her meritless complaints to be nullities, would enable Ball to attempt to evade the consequences of her actions under 28 U.S.C. §1915(g) by falsely asserting that this dismissal–which was clearly based upon the complete lack of merit in Ball's claims–was not a merits-based dismissal which would count as a strike under §1915(g).

Submitted this 4th day of May 2012.

                                    ***S/Martin C.  Carlson***_____
                                    Martin C. Carlson
                                    United States Magistrate Judge